Of Counsel:
ASHFORD & WRISTON
A Limited Liability Law Partnership LLP

MIRANDA TSAI          8308-0
GARY P. QUIMING       8822-0
P.O. Box 131
Honolulu, Hawaii 96810
Telephone: (808) 539-0400
Email: mtsai@awlaw.com; gquiming@awlaw.com

Attorneys for Secured Creditor
AMERICREDIT FINANCIAL
SERVICES INC.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| In re | ) CASE NO. 11-01156 |
|---|---|
| | ) (Chapter 13) |
| PHUNG VAN NGUYEN, | ) |
| | ) Hearing: |
| Debtor. | ) Date: June 23, 2011 |
| | ) Time: 9:40 a.m. |
| | ) Judge: Honorable Robert J. Faris |
| | ) |
| | ) Related Doc. Nos. 4 and 9 |

**DECLARATION OF JENNIFER VAN GUILDER IN SUPPORT OF
OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN
FILED APRIL 22, 2011 AND MOTION TO VALUE
COLLATERAL FILED APRIL 26, 2011; EXHIBITS "A"-"C"**

I, Jennifer Van Guilder, under penalty of perjury, state as follows:

1. I am a Bankruptcy Specialist at AMERICREDIT FINANCIAL

SERVICES INC. ("AMERICREDIT") and am competent to testify to the matters

set forth herein and do so based on the records and files of AMERICREDIT and the records and files in this case.

2. I am submitting this declaration in support of AMERICREDIT's *Objection to Confirmation of Chapter 13 Plan Filed April 22, 2011 and Opposition to Motion to Value Collateral Filed April 26, 2011* filed of even date herewith.

3. I have reviewed the records and files in my possession, which records and files are made and kept in the course of a regularly conducted activity and are kept by AMERICREDIT in the ordinary course of business under the undersigned's custody and control, which records and files were made at or near the time of such acts, which records were made by or from information transmitted by one with personal knowledge of the event or act, and which records and files I have ready access to. It is the regular practice of AMERICREDIT to make such records.

4. Based on such review and participation in the matters referred to, I have personal knowledge of the account of Debtor PHUNG VAN NGUYEN ("Debtor") and am competent and authorized to testify to the matters stated herein.

5. Attached hereto as Exhibit "A" is a true and correct copy of the Credit Sale Contract dated March 5, 2007 (the "Contract") which appears to have been signed by Debtor. The Contract includes a grant of security interest in the vehicle

owned by Debtor, i.e. a 2007 Nissan Titan Truck, VIN No. 1N6AA07A77N22 8099 ("Secured Automobile").

6. Attached hereto as Exhibit "B" is a true and correct copy of Certificate of Title No. PJT013-07 listing Debtor as the registered owner of the Secured Automobile and AMERICREDIT as Lienholder.

7. Attached hereto as Exhibit "C" is a true and correct copy of NADA Official Used Car Guide, Vehicle Summary NADA Values showing the retail value of a vehicle similar in model and mileage as the Secured Automobile is $22,000.00.

DATED: Tarrant, Texas; May 12th, 2011.

/s/ Jennifer Van Guilder
Jennifer Van Guilder
Bankruptcy Specialist for Secured Creditor
AMERICREDIT FINANCIAL SERVICES INC.

# CREDIT SALE CONTRACT-MOTOR VEHICLE
## SIMPLE FINANCE CHARGE

Deal Number: 75251  Stock Number: 70888

| Buyer (and Co-Buyer) Name or Business Name and Buyer Address and Mailing Address (if different) (Including County and Zip Code) | Creditor - Seller (Name and Mailing Address) |
|---|---|
| PHUNG V NGUYEN<br>1127 DAVENPORT ST #206<br>HONOLULU OAHU HI 96822 | HAWAII NISSAN, INC DBA<br>NEW CITY NISSAN<br>900 ALA MOANA BLVD<br>HONOLULU HI 96814 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this Contract, you choose to buy the vehicle on credit under the agreements on the front and back of this Contract. You agree to pay the Creditor - Seller and the holder of this Contract (sometimes "we" or "us" in this Contract) the Amount Financed and Finance Charge according to Your Payment Schedule below. We will figure the Finance Charge on a daily basis. The Federal Truth-In-Lending Disclosures below are part of this Contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| NEW | 2007 | NISSAN TRUCK TITAN CREW C | 1N6AA07A77N228099 | [X] personal, family or household<br>[ ] business<br>[ ] agricultural   Mileage: 9 |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 3000.00 |
|---|---|---|---|---|
| 12.50 % | $ 14325.99 (e) | $ 33059.37 | $ 47385.36 (e) | $ 50385.36 (e) |

(e) means estimate

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 658.13 | Monthly beginning 04/19/2007 |
| N/A | N/A | N/A |
| N/A | N/A (e) | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $ 80.00 or 5 % of the part of the payment that is late, whichever is less.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this Contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1.
  A. Cash Price Including Accessories ............................................. $ 34000.00
  B. Safety Inspection Fee Paid to Seller ........................................ $ N/A
  C. Other _____ .................................... $ N/A
  D. General Excise Tax ........................................................... $ 1611.27
  E. Other Tax .................................................................... $ N/A
  Total Cash Price (A through E) ................................................ $ 35611.27 (1)

2. Total Downpayment
  Trade-In ____(Year)____(Make)____(Model)
  Gross Trade-In Allowance ...................................................... $ N/A
  Less Pay Off Made By Seller ................................................... $ N/A
  Equals Net Trade-In (indicate if negative amount) ............................. $ N/A
  + Cash ........................................................................ $ N/A
  + Dealer Rebate ............................................................... $ 3000.00
  + Manufacturer Rebate ......................................................... $ N/A
  + Other  N/A .................................................................. 
  Total Downpayment ............................................................. $ 3000.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) ..................................... $ 32611.27 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
  A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies:
     Life .............. $ N/A
     Disability ........ $ N/A
  B. Vendor's Single Interest Insurance Paid to Insurance Company .............. $ N/A
  C. Official Fees Paid to Government Agencies .................................. $ N/A
  D. Government Taxes Not Included in Cash Price ................................ $ N/A
  E. Government License and/or Registration Fees ................................ $ 253.10 (e)
  F. Government Certificate of Title Fees ....................................... $ N/A
  G. Other Charges (Seller must identify who is paid and describe purpose):
     to N/A _____ for Prior Credit or Lease Balance ....................... $ N/A
     to Seller _____ for Documentary Fee (not a governmental fee) ............ $ 195.00
     to N/A _____ for N/A ................................................. $ N/A
     to N/A _____ for N/A ................................................. $ N/A
     to N/A _____ for N/A ................................................. $ N/A
     to N/A _____ for N/A ................................................. $ N/A
  Total Other Charges and Amounts Paid to Others on Your Behalf ................ $ 448.10 (4)

5. Amount Financed (3 + 4) ...................................................... $ 33059.37 (5)
   (e) means estimate

[ ] **VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI Insurance is for the Creditor's sole benefit. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI Insurance is obtained. If you elect to purchase VSI Insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in Item 4B of the ITEMIZATION OF AMOUNT FINANCED. The coverage is for the initial term of the contract.

### Insurance (right column)

Insurance. You may buy the physical damage insurance this Contract requires (see back) from anyone you choose who is acceptable to us. However you can't get it through us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
[ ] Credit Life:  [ ] Buyer  [ ] Co-Buyer  [ ] Both
[ ] Credit Disability (Buyer Only)

|  | Premium | Term |
|---|---|---|
| Credit Life $ | N/A | N/A |
| Credit Disability $ | N/A | N/A |

Insurance Company Name  N/A
Home Office Address  N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original Payment Schedule. This insurance may not pay all you owe on this Contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

X _____
Signature of Buyer Requesting Coverage    Date

X _____
Signature of Co-Buyer Requesting Coverage    Date

**DEBT CANCELLATION AGREEMENT.** A debt cancellation agreement is not required to obtain credit. Please sign below if you wish to purchase the debt cancellation agreement.

| Type of Debt Cancellation Agreement | Initial Term | Fee for Initial Term |
|---|---|---|
| N/A | N/A | $ N/A |

[ ] If this box is checked by the Seller, the following also applies: the initial term of coverage for the debt cancellation agreement, the cost which is shown above and in Item 4G of the Itemization of Amount Financed, is less than the term of your loan. The term of the debt cancellation agreement is N/A

X _____
Signature of Buyer Requesting Coverage    Date

X _____
Signature of Co-Buyer Requesting Coverage    Date

**THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. IT DOES NOT MEET THE REQUIREMENTS FOR PROOF OF FINANCIAL RESPONSIBILITY UNDER HAWAII LAW.**

**Returned Check Charge:** You agree to pay a charge of $ 30.00 if any check you give us is dishonored.

**SERVICE CONTRACT (Optional).** By initialling below, you request a Service Contract written with the following company for the term shown below. The cost is shown in Item 4G of the Itemization of Amount Financed.
Company  N/A
Term: The first of  N/A  months or  N/A  miles
Buyer's Initials ____ / ____    Deductible  N/A

**Seller's Right to Cancel.** If Buyer and Co-Buyer sign here, and if Seller is unable to assign this Contract to a financial institution, the provisions of the Seller's Right to Cancel on the back apply.

X _(signature)_
Signature of Buyer

X _____
Signature of Co-Buyer

---

[ ] (check if applicable - used vehicles only)  **"AS IS"**
**THIS VEHICLE SOLD "AS IS". YOU WILL HAVE TO PAY FOR ANY REPAIRS NEEDED AFTER SALE. IF WE HAVE MADE ANY PROMISES TO YOU, THE LAW SAYS WE MUST KEEP OUR PROMISES, EVEN IF WE SELL "AS IS". TO PROTECT YOURSELF, ASK US TO PUT ALL PROMISES IN WRITING.**

Buyer _____ Date _____   Co-Buyer _____ Date _____

This [ ] IS  [X] IS NOT a door-to-door sale.   There [ ] IS  [X] IS NO 3-DAY RIGHT TO CANCEL on this purchase.
Customer's Initials _(init)_    Salesperson's or Dealer's Initials _(init)_

**HOW THIS CONTRACT CAN BE CHANGED.** This Contract contains the entire agreement between you and us relating to this Contract. Any change to this Contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs X _(sig)_   Co-Buyer Signs X _____
If any part of this Contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this Contract without losing them.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**ACKNOWLEDGEMENT:** You agree to the terms of this Contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it. You acknowledge that this Contract contains an agreement to arbitrate disputes.

**NOTICE TO THE BUYER:** Do not sign this Contract before you read it. When you sign this Contract, you are entitled to a copy of it that is filled in, in every necessary respect. You should keep it. This Contract is covered by Hawaii's credit sale law, and you have the rights of a buyer under that law. You may also have rights under other state and federal laws.

CREDIT SALE CONTRACT
Buyer Signs X _(signature)_   Date 03/05/07   Co-Buyer Signs X _____ Date _____

**DOOR-TO-DOOR SALE NOTICE.** If the above sale is a door-to-door sale: YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____
Seller signs _New City Nissan_ Date 03/05/07  Address By X _____   Title FINANCE

LAW FORM NO. ___  

U.S. Bankruptcy Court - Hawaii   #11-01156   Dkt # 20   Filed 05/12/11   Page 4 of 7

EXHIBIT "A"

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **HOW WE WILL FIGURE FINANCE CHARGE.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   **ESTIMATED AMOUNTS.** The Finance Charge, Total of Payments and Total Sale Price are estimated amounts based on payments being made by you on the dates and in the amounts set forth in Your Payment Schedule. Because each payment is applied to interest accrued daily through the date your payment is credited, the estimated amounts will be more if you make a late payment and will be less if you make an early payment. The last payment in Your Payment Schedule will be appropriately adjusted to take account of the early or late payments you may make.
   b. **PAYMENTS.** You promise to pay us, or to someone else if we so order, the Amount Financed stated on the front of this Contract (this amount is called "principal"), plus interest on the decreasing unpaid principal balance at the Annual Percentage Rate stated on the front of this Contract by making the payments stated in Your Payment Schedule. You will pay everything else you owe under the terms of this Contract with your last scheduled payment. Your payments will be applied first to the interest; second to the principal; and last to any late charges and collection costs. In addition, if we incur expenses for services due to a special request by you, we may add such expense or a fee for such services to your principal balance under this Contract.
   c. **PERMITTED FINANCE CHARGE.** We do not wish to charge you more Finance Charge than is permitted by law, and we believe we are not doing so. However, if changes in Your Payment Schedule are necessary to comply with any law, we may give you a refund of not more appropriate adjustments or changes to payments already made or to future payments, in order to reduce the amount of Finance Charge or the period we use to keep to the legally permitted limits.
   d. **YOU MAY PREPAY.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **PRESERVATION OF THE VEHICLE.** Until all amounts owing under this Contract are paid in full:
   - You must keep the vehicle in good condition and repair, the way it is now, and protect it against loss, damage or deterioration. You must not damage or destroy the vehicle or use it in any way that tends to do so.
   - You must license, register, use and control the vehicle as the law requires. You must pay all license and registration fees before they are overdue.
   - You must give us the number of each license and registration and all legal ownership certificate, which will show us as the legal owner.
   - You must show us the vehicle and let us look it over any time we want. You must not alter or rebuild the vehicle. You must not operate or use the vehicle if not permitted to do so under the property insurance policies required in this Contract or under any law.
   - You must let us know right away if the vehicle is damaged or destroyed.
   - You must let us know right away of any change of address or storage place of the vehicle.
   - You must not use the vehicle for any unlawful purposes (such as illegally transporting or concealing liquor, drugs, narcotics or any other kind of contraband), or for racing competition of any type, or for military purposes.
   - You must not abandon, give possession of, sell or transfer the vehicle or any right to it to anyone without our prior written consent.
   - You must be the owner of the vehicle and keep complete and total control of it. No one other than us may have any claim of any kind to the vehicle. No financing statement showing any secured party other than us and covering the vehicle is on file in any public office.
   - You must keep the vehicle free from, and if necessary defend it in court against, all claims of everyone else but us and people to whom we consent.
   - You must pay before they are overdue, all taxes, bills for repairs or storage and other liens, security interests and charges of any kind, whoever supposedly owes them, on the vehicle or any interest in it or for its use or operation. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   - You must not do anything or let anything happen which will make or let the vehicle become subject to any claim or liable to seizure in bankruptcy or otherwise, or which will impair our interest in it.

3. **YOUR OTHER PROMISES TO US**
   a. **IF THE VEHICLE IS DAMAGED, DESTROYED, OR MISSING.** You agree to pay us all you owe under this Contract even if the vehicle is damaged, destroyed, or missing.
   b. **USING THE VEHICLE.** You agree not to remove the vehicle from the island in Hawaii where you first keep it, or to sell, rent, lease, or transfer any interest in the vehicle under this Contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer.
   c. **ADVANCES.** If you do not pay any taxes, insurance premiums, or other charges relating to the vehicle, we may pay these charges for you. We may also take any steps which we consider appropriate to protect the vehicle and may charge the cost of doing so to you. You will repay us all advances. Any amount we pay may be added to your principal balance under this Contract, and we may increase at our option the amount or the number of your payments or the size of your final payment to provide for payment of the additional amounts.
   d. **SECURITY INTEREST (including SETOFF).** We may set off amounts due under this Contract against any amounts we may owe you, such as your checking and savings account, to the extent permitted by law and without any advance notice. This is called our right of "setoff." We are retaining title to the vehicle and a Hawaii Uniform Commercial Code security interest in the vehicle until you pay all you owe under the Contract. Our security interest in the vehicle will also cover any "accessories" such as accessories and equipment now or later installed in or attached to the vehicle, and any substitutions and any proceeds (including insurance, maintenance, service or other contract proceeds). You agree that we may apply any premium or charges from the contracts refunded on any insurance, maintenance, service, or other contracts which you buy in connection with this Contract toward the Contract balance. This Contract is not secured by any other property regardless of what any other agreement says.
   e. **TITLE; FINANCING STATEMENT.** You will name us as the legal owner on the title to the vehicle. The registered owner will be the Buyer, the Other Owner or both, as you designate. You agree to cooperate in any way to establish, preserve, and protect our security interest. You will pay all license and registration fees when due and furnish us all legal ownership certificates for the vehicle if you receive them.
   f. **INSURANCE YOU MUST HAVE ON THE VEHICLE.**
   Property insurance is required. You may obtain such insurance for the vehicle from any insurance company you choose that is authorized to do business in the State of Hawaii and through any person you choose.
   You will insure the vehicle against the hazards and in the form and amount we specify in this Contract. You will insure the vehicle for its actual cash value against fire, theft, and the risk listed in the comprehensive coverage and against collision or upset in the same amount less a maximum deductible of $500.00. Each policy insuring the vehicle will be payable to both you and us. You will furnish us satisfactory evidence of insurance. Each policy you get will provide that the insurance company will give us at least ten (10) days' written notice before the policy is cancelled. If you fail to obtain or provide proof of the insurance described above, or if you fail to pay any insurance premium, we may, at our option, obtain insurance coverage at your expense for our interest only. Insurance purchased by us will not cover your equity or your interest in the vehicle. Any coverage we purchase will not include insurance on liability for bodily injury or property damage, and will not meet the requirement for proof of financial responsibility under Hawaii law. Insurance purchased by us at your expense may cover our interest in the vehicle for the outstanding contract balance, and the amounts we pay will be added to your principal balance, and interest will be charged on such amounts. The charge will be the premium of the insurance and a Finance Charge equal to the Annual Percentage Rate shown on the front of this Contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, at our option, we can use the insurance proceeds to replace or repair it or to repay any amounts you owe under the Contract. The charges for insurance we obtain may be substantially higher than the charges you would have incurred if you purchased the insurance as you are required by this Contract to have on the vehicle yourself. You are free to obtain your own insurance at any time through any insurance company of your choice, unless we, for good cause, refuse to accept it. We will cancel any insurance we may have placed upon receipt of evidence of your having acceptable insurance in effect.
   g. **REMOVAL OF YOUR VEHICLE FROM HAWAII.** (Non-Military). This paragraph will apply only if you are not a member of the armed forces of the United States on active duty at the time of signing this Contract. The vehicle may be removed from the State of Hawaii only after you receive a separate written consent from us. We will consent to the removal of the vehicle from the State of Hawaii if, at the time of removal, all of the following conditions are met:
   - The vehicle is being shipped to a location within the continental United States.
   - You provide us with your new mailing address (and residence address if different from your mailing address) and written, verifiable confirmation of employment at your next place of residence.
   - You are not in default of any promise or obligation under this Contract.
   - We are satisfied that your relocation will not adversely affect your financial condition and ability to fulfill your promises and obligations under this Contract.
   - Your record of payments due under this Contract is determined by us, in our sole discretion, to be satisfactory.
   - You furnish evidence satisfactory to us that you have continuously maintained the property insurance required under the Contract. This condition shall not be satisfied if we purchased the property insurance because you failed to maintain it.
   - All who signed this Contract, such as co-buyers, guarantors, which may also include the original Seller (Dealer), or other owners, have agreed in writing to the removal of the vehicle from the State.
   - No derogatory credit report on you has been filed with any credit reporting agency since the purchase of the vehicle.
   - The balance due under this Contract does not exceed the wholesale value of the vehicle as shown in the current Kelly Blue Book, or if not available, another nationally recognized used car pricing service.
   If you are denied permission to remove the vehicle from the State, we will provide you with a written explanation of the reasons for the denial. If you are a member of the armed forces of the United States on active duty at the time of signing this Contract, the removal of the vehicle from the State of Hawaii is governed by an agreement which is separate from this Contract.

4. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **YOU MAY OWE LATE CHARGES.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, you must also take the steps described below.
   b. **YOU MAY HAVE TO PAY ALL YOU OWE AT ONCE.** If you break your promises (default), we may demand that you pay all you owe on this Contract at once. You will be in default if (a) you fail to make any payment when due under this Contract or any other obligation you owe us, (b) you fail to keep any of your other promises on the front or reverse side of this Contract, (c) you die, terminate, or dissolve your business, corporation, or other entity, or you are involved in any bankruptcy or insolvency proceeding brought by or against you, or (d) any representation you have made to us in this Contract or to induce us to make this Contract is false.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **YOU MAY HAVE TO PAY COLLECTION COSTS.** If we hire an attorney or licensed collector who is not our salaried employee to collect what you owe, you will pay court reasonable attorneys' fees or collectors' fees. If we file a lawsuit to collect on this Contract you will pay court costs as permitted by law whether or not we hire an attorney.
   d. **OUR RIGHTS IF YOU DEFAULT.** If you are in default under this Contract, we may do one or more of these things:
   - Require you to deliver possession of the vehicle to us at a place where we choose which is reasonably convenient to both of us.
   - Enter wherever the vehicle is located and take (repossess) the vehicle from you if we do so peacefully and the law allows it. We will not be responsible for anything left in the vehicle or attached to it when we repossess it. Any accessories, equipment, or replacement parts will remain with the vehicle.
   - Cancel any insurance purchased under this Contract or any maintenance, service, or other contracts for the vehicle. If we do, we will have no liability for anything that happens that would otherwise have been covered by the cancelled insurance or maintenance, service, or other contracts. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.
   - Sell the vehicle to a wholesaler or retailer or any other person by any reasonable method.
   - Use the proceeds of the sale toward what you owe us. We can add to what you owe us the cost of the collection, repossession, retaking, holding, preparing for sale, sale, court costs, and reasonable attorney fees. If you owe more than the sale proceeds, we will pay you the difference unless the law requires us to pay it to someone else.
   - Require you to pay our court costs and attorney's fees as described in the Contract.
   - Exercise all rights which the Hawaii Uniform Commercial Code, the Hawaii Credit Sales Act, and all other laws and regulations give to us.
   - Before or after selling the vehicle, we may obtain a court judgment against you for all you owe under the Contract, and we may collect the judgment by any legal means.
   e. **HOW YOU CAN GET THE VEHICLE BACK IF WE TAKE IT.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **WAIVERS.** You waive your rights to require us to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Contract, or who agrees to make payment to us if you fail to keep your promises under this Contract, also waives these rights. These persons are known as "guarantors."
   g. **SCOPE OF YOUR RESPONSIBILITY.** If more than one Buyer signs this Contract, each agrees to be fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Contract. Any guarantor of this Contract is also obligated to do these things. We may enforce our rights under this Contract against you individually or against all of you together. This means that any one of you may be required to pay all the amounts owed under the Contract. Any person who takes over your rights or obligations under this Contract will have all of your rights and must keep all of your promises made in this Contract. Any person who takes over the rights or obligations of a guarantor of this Contract is also obligated to keep all of the promises made in this Contract. You cannot assign this Contract without our written consent.
   h. **SCOPE OF OUR RIGHTS.** We may exercise the following rights without giving notice to anyone, getting the consent of anyone, or releasing anyone from their obligation to pay the full amount of this Contract. Those rights are: (a) to delay or change the amounts of the payments due under this Contract; (b) to extend, renew, or change any other term of this Contract; (c) to release other security (including a co-guarantor); (d) to grant any releases or compromises; (e) to sue any guarantor directly without first suing you or any other person or selling any security or pursuing any other remedy; or (f) to collect from any guarantor notwithstanding real or personal defenses (such as usury or failure of consideration) that you might have. No person who takes over any rights under this Contract will have any of our rights. Any person who takes over your rights under the Contract will have all of our rights which the law gives to us. Any person who takes over your rights under the Contract will have all of our rights.
   i. **RECOVERY OF REVERSED PAYMENTS.** If any payment previously applied to your obligation under this Contract must be returned by us as a voidable preference under the Bankruptcy Code or for any other reason, whether by court order, administrative order, settlement, or otherwise, you and any guarantor of this Contract will remain liable for the full amount returned. You and any such guarantor will remain liable as if such amount had never been received by us, notwithstanding any cancellation of this Contract or termination of the guaranty or other agreement evidencing the obligation of any guarantor.
   j. **CONTINUATION OF OUR RIGHTS.** Even if we do not exercise or enforce any right which we have under this Contract or under the law, we will still have all of those rights and may exercise and enforce them in the future.
   k. **EXERCISE OF MORE THAN ONE RIGHT.** Each of our rights under this Contract is separate. We may exercise and enforce one or more of those rights, as well as any of our other rights under the law, one at a time or all at once.

5. **WARRANTIES SELLER DISCLAIMS**
   Unless the Seller makes a written warranty, or enters into a service Contract within 90 days from the date of this Contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not effect any warranties covering the vehicle that the vehicle manufacturer may provide.

6. **USED CAR BUYERS GUIDE.** The information you see on the window form for the vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the Contract of sale.
   **Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

7. **GOVERNING LAW.** This Contract has been delivered to us and accepted by us in the State of Hawaii. By signing this Contract, you (including all buyers, guarantors, and other parties) agree to submit to the jurisdiction of the state and federal courts in the State of Hawaii, and further agree that any legal action that may be filed by you elsewhere will be transferred to an appropriate court in Hawaii if we decide that we want it to be transferred. The law of the State of Hawaii will govern this Contract, except that this sentence shall not limit or waive the application of any federal law or regulation. If any term of this Contract conflicts with the law, all other terms of this Contract will remain in effect if they can be given effect without the conflicting term. This means that any terms of this Contract which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

**Seller's Right to Cancel**
After you sign this Contract, if for any reason we (the Seller) are unable to assign this Contract to one of the financial institutions with whom we regularly do business, this Contract will not be binding on you or us, except for this paragraph. You agree to the following. You will return the vehicle to us. You will pay us on demand all reasonable charges and expenses for any damage to the vehicle. Unless prohibited by applicable law, you will pay the greater of $.30 per mile or $20 per day for your use of the vehicle. When you have paid us the amount you owe, we will return any trade-in to you. If you fail to return the vehicle within 24 hours of notice, you agree that we may, solely at our option, cancel the sale and retake immediate possession of the vehicle, and in addition to those charges specified above, you agree to pay us all reasonable expenses we incur in connection with retaking the vehicle, including attorneys' fees and other expenses to the extent permitted by applicable law.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
The preceding NOTICE applies only if "the personal, family or household" box in the "Primary Use for Which Purchased" section of this Contract is checked. In all other cases, the Buyer will not assert against any subsequent holder or assignee of the Contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this Contract.

### ARBITRATION CLAUSE
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**
1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request an new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

Seller assigns its Interest in this Contract to _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☐ Assigned without recourse   ☐ Assigned with limited recourse

Seller _____
Form No. 553-H 1/06

U.S. Bankruptcy Court - Hawaii  #11-01166  Dkt # 20  Filed 05/12/11  Page 5 of 7

**NOTICE OF TRANSFER**    LICENSE NUMBER

PJT013-07      PJT013

MAKE NISS    TYPE PKUP

VEHICLE IDENTIFICATION NUMBER 1N6AA07A77N228099    DATE OF TRANSFER

YOU ARE HEREBY NOTIFIED THAT I(WE), THE UNDERSIGNED OWNER(S) OF THE MOTOR VEHICLE DESCRIBED ABOVE, SOLD OR TRANSFERRED MY(OUR) INTEREST IN SAID MOTOR VEHICLE TO A NEW OWNER.

PRINT NAME OF NEW OWNER _____

PRINT ADDRESS OF NEW OWNER _____

CITY _____ STATE _____ ZIP CODE _____

SIGNATURE OF TRANSFEROR(S) OR SELLER(S) _____

ADDRESS OF TRANSFEROR(S) OR SELLER(S) _____

**DETACH BEFORE GIVING TITLE TO NEW OWNER**    CS-L-53

---

## Certificate of Title
City and County Of Honolulu

LICENSE NUMBER: PJT013

MAKE: NISS    TYPE: PKUP    DATE ISSUED: 03-27-2007    EMBLEM NO.: T13649

VEHICLE IDENTIFICATION NUMBER: 1N6AA07A77N228099    TAX ON 12 MOS.

WEIGHT: 4940    YEAR MODEL: 07    DATE SOLD NEW: 03-05-07

REGISTERED OWNER(S) & ADDRESS    TCI PJT013-07

NGUYEN PHUNG V
1127 DAVENPORT ST 206
HONOLULU HI 96822

SAFETY CHECK EXPIRES: FEB 2009    TOTAL PAID: 253.10

THIS CERTIFICATE IS EVIDENCE OF RECORDED OWNERSHIP OF MOTOR VEHICLE DESCRIBED. KEEP THIS IN A SAFE PLACE. DO NOT KEEP IN VEHICLE. REGISTERED OWNER ABOVE IS ALSO LIENHOLDER WHEN LIENHOLDER'S NAME IS NOT TYPED IN. WHEN VEHICLE IS SOLD, MORTGAGED, ETC., THIS INSTRUMENT, PROPERLY ENDORSED, MUST BE PRESENTED TO THE DEPARTMENT BEFORE OWNERSHIP TRANSFER CAN BE RECORDED. ANY UNOFFICIAL ERASURES OR ALTERATIONS WILL VOID THIS CERTIFICATE.

LIENHOLDER

AMERICREDIT FINANCIAL SVCS INC
PO BOX 182673
ARLINGTON TX 76096

M01
F20239

### SECTION A – ASSIGNMENT OF TITLE BY SELLER   T13649

IF REGISTERED OWNER(S) AND LIENHOLDER ARE SAME, SIGNATURE(S) RELEASING REGISTERED OWNERSHIP ALSO RELEASES LIEN TO VEHICLE. TO RETAIN A LIEN ON THE VEHICLE, REGISTERED OWNER(S) MUST COMPLETE NEW LIENHOLDER PORTION (SECTION E) ON REVERSE SIDE OF THIS CERTIFICATE.

THE ODOMETER READING AT LAST TRANSFER WAS: 9

FEDERAL AND STATE LAW REQUIRE THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE ODOMETER STATEMENT OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT. I CERTIFY TO THE BEST OF MY KNOWLEDGE THAT THE ODOMETER READING IS THE ACTUAL MILEAGE OF THE VEHICLE DESCRIBED HEREIN UNLESS ONE OF THE FOLLOWING STATEMENTS IS CHECKED:

ODOMETER READING _____ (NO TENTHS)

CHECK IF APPLICABLE
[ ] 1. THE MILEAGE READING REFLECTS THE AMOUNT OF MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS.
[ ] 2. THE ODOMETER READING IS NOT THE ACTUAL MILEAGE. WARNING: ODOMETER DISCREPANCY

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY TRANSFERS THE MOTOR VEHICLE DESCRIBED ON THIS CERTIFICATE TO THE BUYER WHOSE NAME AND ADDRESS IS PRINTED IN SECTION C OR D AND WARRANTS IT TO BE FREE OF ALL LIENS AND ENCUMBRANCES EXCEPT AS STATED IN SECTION E.
NOTE: SELLER MUST COMPLETE NOTICE OF TRANSFER FORM ABOVE.

DATE OF TRANSFER | PRINTED NAME AND SIGNATURE OF SELLER; IF FIRM: PRINTED NAME, TITLE AND SIGNATURE OF AUTHORIZED PERSON

DATE OF TRANSFER | PRINTED NAME AND SIGNATURE OF JOINT SELLER, IF HELD IN JOINT OWNERSHIP

BEING DULY SWORN UPON OATH SAYS THAT THE STATEMENTS SET FORTH ARE TRUE AND CORRECT.
SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ 20 _____
MY COMMISSION EXPIRES _____ (AFFIX SEAL) _____ (NOTARY PUBLIC OR OTHER OFFICER HAVING SEAL)

NOTE: NOTARIZATION OF SELLER'S SIGNATURE IS OPTIONAL. HOWEVER, NOTARIZATION WILL PREVENT REJECTION FOR IRREGULAR SIGNATURE(S) UPON COMPARISON WITH THE SIGNATURE(S) ON FILE OR FOR SIGNATURE VERIFICATION WHEN TRANSFER IS RECORDED IN ANOTHER COUNTY.

ANY ALTERATIONS OR ERASURES VOID TITLE

# NADA Official Used Car Guide
## Wednesday, April 27, 2011

## Vehicle Summary NADA Values

| | |  | | |
|---|---|---|---|---|
| **Region:** | California Region - April 2011 | | **Reference #:** | |
| **Vehicle Description:** | 2007 NISSAN Titan Crew Cab-V8 Crew Cab LE 2WD | | **VIN:** | 1N6AA07A77N228099 |
| **MSRP:** | $33,150 | | **Weight:** | 0 |
| **Mileage:** | 21,893 | | | |

| | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Loan | Clean Retail |
|---|---|---|---|---|---|
| **Base Value** | $13,350 | $14,875 | $16,125 | $14,525 | $19,500 |
| **Optional Equipment** | | | | | |
| **Option Total** | $0 | $0 | $0 | $0 | $0 |
| **Mileage Adjustment** | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 |
| **Total NADA Official Used Car Guide Values** | $15,850 | $17,375 | $18,625 | $17,025 | $22,000 |

EXHIBIT "C"

NADA assumes no responsibility or liability for any errors or omissions
or any revisions or additions made by anyone on this report.
All NADA values are reprinted with permission of
NADA Used Car Guide, NADASC.